IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BRIAN CRUSE,

    Plaintiff,

v.                                                                            No. 1:15-cv-01217-JDB-egb

THE SUN PRODUCTS CORPORATION,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Brian Cruse, brought this action against Defendant, The Sun Products Corporation ("Sun Products") on August 27, 2015, alleging violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e), 42 U.S.C. § 1981 (as amended by the Civil Rights Act of 1991), the Tennessee Human Rights Act, and the common law of the State of Tennessee. (D.E. 1.) Before the Court is Sun Products' amended motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 22.) Plaintiff has responded to the motion, D.E. 28–29, and Defendant has filed a reply, D.E. 40, making the matter ripe for disposition. For the reasons discussed below, the motion is GRANTED.

**I.    BACKGROUND**

    **A.    Factual Background**

The following facts are undisputed unless otherwise noted. In late 2004, Plaintiff began working for Defendant as an operator in the raw materials department of its manufacturing center in Dyersburg, Tennessee. He received a promotion to "Team Lead" in 2006. Cruse filed an internal complaint in October 2013, alleging unequal treatment between himself and a white

coworker. Cruse is African-American. He argues that Defendant punished him for making this complaint, starting a series of conflicts between himself and his employer that ultimately led to his termination one year later. (D.E. 1 at 2–4.)

In February 2014, Cruse reported to Defendant that a coworker had drawn a racist image on the white board in a common area, depicting Plaintiff in an offensive manner. The employee who reportedly drew the image later resigned. Plaintiff observed other racist activity at work, including finding the phrase "White Pride Worldwide" written in dust on a railcar on more than one occasion. Cruse states that Sun Products did little to curb these occurrences, while Defendant maintains that management was not aware of some of the activity and properly dealt with the incidents brought to its attention. (D.E. 40.)

Defendant asserts that in March 2014, Plaintiff "received a written warning for conduct and violation of the code of conduct." (D.E. 9 at 3.) Cruse characterizes this event as "false allegations of bullying." (D.E. 1 at 4.) Plaintiff then requested and received copies of his last three job performance evaluations. He claims that they had been altered, "adding absences from work that had not occurred and recording excused absences accompanied by a physician's note as unexcused." (D.E. 1 at 5.) Defendant denies this allegation. (D.E. 9 at 3.)

After a brief period of suspension from work, Sun Products terminated Plaintiff's employment on November 14, 2014, and filled his position with a white employee. Defendant maintains that it fired Cruse for unsatisfactory conduct, D.E. 9 at 4, but Plaintiff asserts that he "was a victim of the Defendant's pattern and practice of illegal race discrimination and retaliation," D.E. 1 at 3.

B.     **Procedural History**

Cruse filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on June 11, 2014, while still employed with Defendant. (D.E. 22-5 at 53–54.) He amended the complaint in December of that year following his termination. (*Id.*) In his EEOC filings, he alleged racial discrimination and retaliation on the part of Sun Products. *Id.* On February 27, 2015, Plaintiff, through counsel, filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Tennessee. Chapter 13 Voluntary Pet., *In re Cruse*, No. 15-10431 (Bankr. W.D. Tenn. Feb. 27, 2015), D.E. 1. This petition required that Plaintiff list his personal property and other assets, including his vehicles, household goods, and interest in his 401k. *Id.* When prompted to list "[o]ther contingent and unliquidated claims of every nature," Plaintiff did not include his claim against Defendant or mention that he had filed a complaint with the EEOC. *Id.* at 10. In fact, he did not mention this claim anywhere in the voluntary petition and did not otherwise communicate its existence to the bankruptcy court.

Cruse obtained a Notice of Right to Sue from the EEOC on June 16, 2015, and subsequently filed suit in this Court on August 27 of that year. (D.E. 1.) Sun Products moved for summary judgment in this case on June 21, 2016, raising the issue of judicial estoppel. (D.E. 20.) On the next day, Plaintiff filed an amended schedule in his bankruptcy case, asserting for the first time in that court that he had a "potential EEOC settlement against Sun Products." Am. Schedule A/B, *In re Cruse*, D.E. 28 at 5. He also specified that the value of the claim was $100,000. *Id.* Plaintiff subsequently moved for permission to employ counsel to pursue this action, Mot. to Employ Att'y, *In re Cruse*, D.E. 29, which the bankruptcy court granted, Order on Mot. To Employ Att'y, *In re Cruse*, D.E. 35.

## II. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)). A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter"; rather, it is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) ("Credibility determinations . . . and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Anderson*, 477 U.S. at 255)).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23; *see In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Finally, although a court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the

nonmoving party." *Demyanovich v. Cadon Plating and Coatings, L.L.C.*, 747 F.3d 419, 426 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) ("[A] court must view the evidence 'in the light most favorable to the opposing party.'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970))).

### III. ANALYSIS

Sun Products asserts that Plaintiff's claims are barred by the doctrine of judicial estoppel because he failed to include any claims against it in his prior bankruptcy filing. (D.E. 22 at 2–6.) Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). It is "an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990). The Sixth Circuit has described judicial estoppel as a rule against "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," or "hav[ing] [one's] cake and eat[ing] it too." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005). No "inflexible prerequisites" exist for judicial estoppel, *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013), and it should be "applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement," *Teledyne*, 911 F.2d at 1218.

The Sixth Circuit has routinely applied the doctrine to bar employment related claims not disclosed in prior bankruptcy proceedings where: "(1) the debtor assumed a position contrary to one [he] asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary

5

position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence." *Kimberlin*, 520 F. App'x at 314; *see White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010). Applying judicial estoppel under these circumstances recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests. *Kimberlin*, 520 F. App'x at 314; *see White*, 617 F.3d at 479. With regard to the mistake-or-inadvertence prong, the Sixth Circuit considers whether "(1) [the debtor] lacked knowledge of the factual basis of the undisclosed claims; (2) [he] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *Kimberlin*, 520 F. App'x at 315.

### A. Whether Plaintiff Assumed a Position Contrary to One He Asserted in Bankruptcy

Eleven U.S.C. §§ 521(a)(1) and 541(a)(7) "describ[e] the debtor's affirmative duty to disclose all of [his] assets to the bankruptcy court." *White*, 617 F.3d at 479. This includes contingent and unliquidated claims from lawsuits. *Id.* at 479 n.5. "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *Id.* (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir. 1999)). These disclosures and filings with the bankruptcy court are under oath, "signed and swor[n] [to be] accurate under penalty of perjury." *Id.* at 479.

Omitting a claim from such a bankruptcy petition, as Cruse did here, is tantamount to stating under oath that the claim does not exist. *Id.* The omission conflicts not only with the subsequent lawsuit in the district court, but also with the debtor's "earlier filing of complaints with the EEOC and the Tennessee Human Rights Commission." *Id.* In this case, Plaintiff assumed contrary positions in different fora, asserting to the bankruptcy court that he had no claims while stating the opposite before this Court and the EEOC.

6

The fact that Cruse obtained a Notice of Right to Sue from the EEOC *after* filing for bankruptcy does not meaningfully distinguish his situation from the plaintiff's in *White*. *See* 617 F.3d at 479 n.5. In both cases, the respective plaintiff filed a claim related to an employment discrimination charge before filing for bankruptcy. *Id.* This is sufficient proof to demonstrate that Plaintiff asserted contrary positions in the bankruptcy court and in this Court.

B. **Whether the Bankruptcy Court Adopted the Contrary Position**

"[W]hen a bankruptcy court—which must protect the interests of all creditors—approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." *Lewis*, 141 Fed. App'x at 425 (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988)). In *White*, the court found that an order of the bankruptcy court that required the plaintiff to make payments to the trustee and attend a meeting of the creditors adopted her position that her harassment claim did not exist. 617 F.3d at 479. In this case, the bankruptcy court issued an order on May 11, 2015, confirming Plaintiff's Chapter 13 bankruptcy plan. Order Confirming Plan, *In re Cruse*, D.E. 16. This order, signed by United States Bankruptcy Judge Jimmy L. Croom, relied on "the entire record herein" and directed Cruse to make biweekly payments via payroll deduction. *Id.* at 1. Accordingly, the order constituted an adoption by the bankruptcy court of Plaintiff's contrary position, i.e., that he had no contingent, unliquidated legal claims.

C. **Whether Plaintiff's Omission Resulted from Mistake or Inadvertence**

1. **Plaintiff's knowledge of the factual basis of the undisclosed claim and motive for concealment**

In *White*, the court held that the plaintiff "had knowledge of the factual basis of the undisclosed harassment claim, since she had already filed a complaint before the EEOC." 617

7

F.3d at 479. The same is true here, where Cruse filed his complaint with the EEOC over eight months before declaring bankruptcy. That he amended the complaint before the bankruptcy strengthens the notion that he maintained sufficient knowledge of his claim's factual basis.

Turning to Plaintiff's motive for concealment, "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis*, 141 Fed. App'x at 426. In *White*, the court observed that "if the harassment claim became a part of [the plaintiff's] bankruptcy estate, then the proceeds from it could go towards paying White's creditors, rather than simply to paying White." 617 F.3d at 479. The court found this fact sufficient to conclude that the plaintiff "had a motive for concealment." *Id.* The same motive can be imparted to Plaintiff in this case, as he is a similarly situated Chapter 13 petitioner whose discrimination claim, if disclosed to the bankruptcy court, would have its recovery consumed by his creditors. Again, based on this case's striking similarity to the facts of *White*, the Court finds that this prong is met.

### 2. Absence of bad faith

"[T]he burden of establishing the absence of bad faith is on the plaintiff when the defendant has shown that the plaintiff possessed knowledge of the factual basis of the claims and had motive to conceal them from the bankruptcy court." *Walker v. Moldex Metric, Inc.*, No. 2:10-CV-164, 2011 WL 3044529, at *4 (E.D. Tenn. July 25, 2011); *see White*, 617 F.3d at 480 (requiring that the plaintiff "point to evidence showing an absence of bad faith"); *see also id.* at 487 (Clay, J., dissenting) ("The majority places the entire burden on Plaintiff to show an absence of bad faith . . . ."). This inquiry focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim. "[T]he extent of these efforts, together with their effectiveness, is important." *White*, 617 F.3d at 480; *see*, *e.g.*, *Stephenson*, 700 F.3d at 274 (declining to apply judicial estoppel where trustee's affidavits acknowledging awareness of suit

presented a factual dispute regarding whether the debtor's omission was in bad faith); *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 895–97 (6th Cir. 2004) (same, where evidence showed that debtor notified trustee of claim, asked trustee to pursue the claim on behalf of the estate, and moved for a status conference on the claim and to substitute the trustee as plaintiff in the suit).

Timing is also a crucial factor. *White*, 617 F.3d at 480. "[E]fforts to correct an omission that came before the Defendants filed their motion to dismiss are more important than efforts that came after the Defendants filed their motion to dismiss." *Id.* Put more bluntly, "a debtor may not cure an omission only after it is challenged and still claim good faith." *United States & Marr*, No. 1:14-CV-2880-JDB-EGB, 2016 WL 4126583, at *4 (W.D. Tenn. Aug. 2, 2016) (citing *Tyler v. Fed. Express Corp.*, 420 F. Supp. 2d 849, 858–59 (W.D. Tenn. 2005)). This case falls precisely into that category, as Plaintiff first informed the bankruptcy court of his discrimination claim after Defendant raised judicial estoppel in its motion for summary judgment. The Court recently dealt with a case that serves as a useful contrast to this one:

> Initially, when Plaintiff-Intervenor filed for bankruptcy, she informed her bankruptcy attorney's paralegal about the fair housing complaint that she filed. Although Marr failed to understand what some of the technical terms in the bankruptcy schedules meant, such as "administrative proceedings, contingent claims, and unliquidated claims," none of the terms were explained to her. She also described this confusion during her deposition for this case. Once Plaintiff-Intervenor was informed by her attorneys in the present case that she was obligated to list the claim in her bankruptcy petition, she hired a bankruptcy attorney. When that attorney did not take any action, she promptly employed new counsel, who helped reopen her bankruptcy case on December 1, 2015. The HUD complaint and the current proceeding were then listed. Subsequently, on April 7, 2016, Marr filed to substitute the Bankruptcy Trustee as the real party in interest pursuant to Federal Rule of Civil Procedure 25. Defendant moved for summary judgment thirteen days later on April 20, 2016. All of these steps were taken before Defendant brought the issue to the Court's attention.

*Marr*, 2016 WL 4126583, at *4 (citations omitted). In *Marr*, the timing, extent, and effectiveness of the plaintiff debtor's communications with the bankruptcy court "demonstrate[d] that judicial estoppel [was] inappropriate . . . ." *Id.*

Cruse's submissions to the bankruptcy court in this case pale in every comparison. Most importantly, Plaintiff made no effort whatsoever to inform the bankruptcy court, the trustee, or any of his creditors of his discrimination case before Defendant moved for summary judgment. *Cf. Stephenson*, 700 F.3d at 275 (approvingly discussing the plaintiff's informal communications of his legal claim to parties involved in the bankruptcy). While both Marr and Cruse lacked a detailed knowledge of bankruptcy law and procedure, Marr took unwieldy but affirmative steps to inform the bankruptcy court of her pending claim. (*See* D.E. 40 at 1 ("Cruse is a high school graduate and does not have a college education.").) In short, Plaintiff's lack of sophistication does not excuse his inaction. Further, he does not argue, and the evidence does not show, an "attorney's mistake [that] should excuse [the] omission . . . ." *White*, 617 F.3d at 483.

To make matters worse for Cruse, the Sixth Circuit has upheld the application of judicial estoppel even where the plaintiff *did* attempt to inform the bankruptcy court of the claim before the defense's dispositive motion. In *White*, the court acknowledged that "two of these efforts . . . came before the Defendants filed their motion to dismiss." 617 F.3d at 480. Nevertheless, it concluded that the plaintiff's "limited and ineffective attempts to correct her initial misfiling distinguish this case from *Eubanks* and make the application of judicial estoppel appropriate." *Id.* In light of this exacting standard, Plaintiff's anemic efforts necessarily fall short.

Independent of its lack of timeliness, Plaintiff's eventual disclosure of his claim to the bankruptcy court leaves much to be desired. His amended Schedule A/B described his claim as a "potential EEOC settlement," but by then the suit had been active in this Court for nearly ten

months.  Despite the form's admonishment to "[g]ive specific information," Plaintiff failed to include the case number, current status, causes of action asserted, or any other details regarding the case.  Providing the bankruptcy court with more information would not have been difficult; Plaintiff could have attached a copy of the complaint to his filing as an exhibit.  Instead, he failed to even mention that the case was pending in federal court.

Returning to the content of the amended Schedule A/B submission, Cruse's valuation of the case at $100,000 seems to be mere conjecture.  Of course, placing an exact numerical value on a case not yet litigated is difficult at best, and Plaintiff's complaint does not specify a dollar amount requested.  Defendant points out, however, that the statutory maximum on the damages requested in the complaint is $300,000—a considerably greater sum.  (D.E. 40 at 18.)  This discrepancy does little to advance Plaintiff's case for proving a lack of bad faith.

Cruse argues that judicial estoppel is inappropriate because any proceeds of the claim will be used to pay his creditors and therefore will not result in a windfall. (D.E. 29 at 7.)  This ignores the Sixth Circuit's holding in *White*, which rejected a similar argument raised by the dissent.  617 F.3d at 481 n.10.  Moreover, the cases Plaintiff cites in support of that proposition predate *White*.  *See Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012) ("*White* was the first case to clearly announce bad faith as part of the judicial-estoppel inquiry.").

Plaintiff also points to his written declaration under oath, in which he asserts that the omission of his claims was "unintentional, and not designed to provide [him] with any type of windfall."  (D.E. 30-1 at 4.)  This evidence does not spare him from the application of judicial estoppel.  In a case where the plaintiff failed to take any affirmative steps to timely notify the trustee or bankruptcy court of her omitted claim, the Sixth Circuit held that her "affidavit alleging unintentional omission 'pale[s] in comparison' to the evidence of good faith presented

11

in . . . *Eubanks*." *Kimberlin*, 520 F. App'x at 315 ("[In *Eubanks*] evidence showed that debtor notified trustee of claim, asked trustee to pursue the claim on behalf of the estate, moved for a status conference on the claim, and moved to substitute the trustee as plaintiff in the suit."). The court explained that "[alt]hough we view the record in the light most favorable to [the plaintiff], this court's 'absence of bad faith' inquiry focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim." *Id.* Plaintiff's affidavit is insufficient to cure their absence.

After considering the parties' arguments and his submissions, the Court finds that Cruse has failed to meet his burden of proving a lack of bad faith under *White*. Accordingly, Plaintiff is estopped from asserting his claim in this forum and Defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## IV.     CONCLUSION

The application of judicial estoppel to bar a litigant's entire lawsuit undeniably constitutes a "harsh remedy." *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 767 F.3d 987, 988 (10th Cir. 2014). Plaintiff's actions and inactions, however, place him squarely on the wrong side of Sixth Circuit precedent, and his efforts to correct his deficiencies may be summed up as too little, too late. For the reasons stated above, Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED this 22nd day of November, 2016.

                                                    s/ J. DANIEL BREEN
                                                  CHIEF UNITED STATES DISTRICT JUDGE